IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01435-WJM-KLM

BENJAMIN FRANCIS KOLE,

     Plaintiff,

v.

SHERIFF JUSTIN SMITH, in his individual and official capacities,
CAPTAIN TIMOTHY PALMER, in his individual and official capacities,
LIEUTENANT STACEY SHAFFER, in her individual and official capacities, and
DEPUTY CASSONDRA WINDWALKER, in her individual capacity,

     Defendants.

_____

# ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Plaintiff's **Motion to Amend** [#37][1] (the "Motion").

Defendants filed a Response [#45] in opposition to the Motion and Plaintiff filed a Reply

[#47]. The Motion is thus ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and

D.C.COLO.LCivR 72.1(c)(3), the Motion to Amend [#37] is referred for disposition [#38].[2]

For the reasons set forth below, the Motion to Amend [#37] is **GRANTED**.

---

[1] "[#37]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

[2] A magistrate judge may issue orders on nondispositive motions only. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988). Whether motions to amend are dispositive is an unsettled issue. *Chavez v. Hatterman*, No. 06-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (citing cases). When an order denying a motion to amend removes a defense or claim from the case it may be dispositive. *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002). For the purposes of resolving the present Motion, the Court will assume that the issue is not dispositive.

# I. Background

## A.    Procedural Background

Plaintiff, who proceeds in this matter pro se[3], is an inmate at the Larimer County Jail in Fort Collins, Colorado.  *Second Am. Compl.* [#15] at 2.  He initiated this action on May 21, 2014 by filing his Complaint [#1].  On June 5, 2014, Plaintiff filed his First Amended Complaint [#9].  On June 9, 2014, the Court directed Plaintiff to file a Second Amended Complaint, noting that the First Amended Complaint "does not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."  *Order Directing Plaintiff to File Second Amended Complaint* [#13] at 2.  The Court went on to explain specific deficiencies with the First Amended Complaint and allowed Plaintiff 30 days in which to file a Second Amended Complaint.  *See generally id.*  On June 19, 2014, Plaintiff filed his Second Amended Complaint [#15].  The Court reviewed the Second Amended Complaint and dismissed certain claims pursuant to 28 U.S.C. § 1915A.  *See generally Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge* [#18] (the "July 23, 2014 Order").  On July 30, 2014, Plaintiff filed a motion seeking reconsideration of the dismissal of certain claims.  *See generally Motion to Reconsider Recinding [sic] the Order to Dismiss For Claim 1(b), Claim 1(d), and Claim 2(b)* [#22] (the "Motion for Reconsideration").  The undersigned recommended that the Motion for Reconsideration

---

[3] The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

be denied.  *Recommendation of United States Magistrate Judge* [#35] at 6.  That

Recommendation was adopted on December 2, 2014 [#42].  In the Recommendation, the

Court explained to Plaintiff that

> [t]o the extent Plaintiff would like to amend his Second Amended Complaint
> to include the additional factual allegations of which he had knowledge at the
> time he filed his Second Amended Complaint, he must file a motion pursuant
> to Fed. R. Civ. P. 15.  Any such motion must comply with all applicable rules,
> including D.C.COLO.LCivR 7.1(d), which requires that "a motion involving a
> contested issue of law [ ] state under which rule or statute it is filed," and the
> motion must include the proposed Third Amended Complaint as a document
> separate from the Motion.  The Court will not permit piecemeal adjudication
> of Plaintiff's case, thus Plaintiff must include all claims he seeks to bring and
> defendants he intends to name in the proposed Third Amended Complaint.

*Recommendation* [#35] at 6.  The instant Motion was filed in response to the Court's

explanation in the Recommendation.  *See Motion* [#37] at 2; *Reply* [#47] at 4.

**B.    The Dismissed Claims**

For ease of reference, the Court briefly summarizes the previously dismissed claims,

the bases for dismissal, and Plaintiff's new allegations relating to each claim.

Claim 1(a) and part of Claim 1(d) were asserted against Judge Thomas L. Lynch of

the County Court of Larimer County, relating to the sentence imposed on Plaintiff by Judge

Lynch.  *Second Am. Compl.* [#15] at 8-13.  As noted in the July 23, 2014 Order, in the

absence of any allegations demonstrating that Judge Lynch acted "in the clear absence of

all jurisdiction," he is entitled to absolute immunity.  *July 23, 204 Order* [#18] at 3-4.

Plaintiff does not attempt to reassert any claims against Judge Lynch in the proposed Third

Amended Complaint.  *See generally Third Am. Compl.* [#37-1].

Claim 1(b) was asserted against Defendants Sheriff Justin Smith ("Smith") and

Captain Timothy Palmer ("Palmer") for alleged violations of the due process clause of the

3

Fifth Amendment and the equal protection clause of the Fourteenth Amendment relating to Plaintiff's transfer from the Larimer County Jail to the El Paso County Jail. *Second Am. Compl.* [#15] at 9-13.   The due process portion of this claim was dismissed by the Court "because [Plaintiff did] not allege that he was transferred to the El Paso County Jail in March 2014 as a form of punishment." *July 23, 2014 Order* [#18] at 5.   The Court further explained that Plaintiff's "allegation that he was transferred without legal authority under Colorado law does not demonstrate the transfer was intended as punishment." *Id.*   The equal protection portion of this claim was dismissed because Plaintiff "fail[ed] to allege facts that demonstrate he was treated differently than any similarly situated inmate when he was transferred to the El Paso County Jail." *Id.* at 6.   In his proposed Third Amended Complaint, Plaintiff seeks to reallege this claim as Claim 1(a) and alleges that his transfer was a punishment based on various conversations he had with other inmates and jail staff. *Third Am. Compl.* [#37-1] at 10-13.   With regard to the equal protection portion of this claim, in the proposed Third Amended Complaint Plaintiff states that he has never "observed any other inmate throughout [his] entire period of incarceration in the Larimer County Jail[ ] get abruptly moved to another jail facility, without a su[b]stantial legitimate government interest, especially a pretrial detainee." *Id.* at 14.

Claim 1(d) included allegations against Defendants Smith, Palmer, Lieutenant Michael Ester ("Ester"), and Lieutenant Stacey Shaffer ("Shaffer") for alleged violations of the Eighth and Fourteenth Amendments. *Second Am. Compl.* [#15] at 612-13.   As the Court previously summarized,

> According to Mr. Kole, the inability to work as an inmate/pod worker prevented him from earning credits toward early release and the procedures used to determine who is eligible to work as an inmate/pod worker are

different than the rules applied to inmates in state prisons.

*July 23, 2014 Order* [#18] at 9.  This claim was dismissed both because Plaintiff "cannot

state an arguable equal protection claim because he is not similarly situated to inmates in

state prisons and his vague and conclusory allegations are not sufficient to demonstrate

cruel and unusual punishment in violation of the Eighth Amendment or unconstitutional

punishment in violation of his right to due process as a pretrial detainee."  *July 23, 2014*

*Order* [#18] at 8-9.  In his proposed Third Amended Complaint, Plaintiff seeks to reallege

this claim as Claim 1(b) and again compares his ability to earn days toward early release

to the rules governing Colorado Department of Corrections inmates.  *Third Am. Compl.*

[#37-1] at 15-17.  Plaintiff also alleges that he has

> not been given [due process] pursuant to the Fifth Amendment and "Equal
> Protection" pursuant to the Fourteenth Amendment of the United States, in
> comparison to other Larimer County Jail inmates, because [he is] unable to
> get approved as an inmate/pod worker even though [he is] medically
> approved, and [he has] never been terminated from [his] job two times, and
> [his] custody level is a Minimum-2 which meets the classification criteria.

*Id.* at 15.  Plaintiff further alleges that he is being punished because of a letter he wrote to

his mother regarding a female employee of the jail.  *Id.*  Plaintiff maintains that he was

never written-up or otherwise formally disciplined, but that, instead, he is being punished

without due process because of the contents of the letter.  *Id.* at 17.

Claim 2(b) was dismissed to the extent it was asserted against Defendants Palmer

and Ester.  *July 23, 2014 Order* [#18] at 10.  The Court found that this claim was "legally

frivolous and must be dismissed to the extent it [was] asserted against Captain Palmer and

Lt. Ester because . . . 'denial of a grievance, by itself without any connection to the violation

of constitutional rights alleged by plaintiff, does not establish personal participation under

§ 1983.'" *July 23, 2014 Order* [#18] at 10 (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)).  In his proposed Third Amended Complaint, Plaintiff seeks to reallege this claim against two new Defendants, Corporal Bryce Griffin ("Griffin") and Sergeant Aaron Smoyer ("Smoyer"),[4] as Claim 2(b).  *Third Am. Compl.* [#37-1] at 19-24. Plaintiff also adds allegations against Defendants Ester and Palmer as part of his amendment of this claim.  *Id.* at 19.  Plaintiff alleges that Griffin told him he broke an "unwritten rule" by writing a letter to his mother that discussed a female staff member and that he would be "sanctioned" as a result.  *Id.* at 21.  Plaintiff alleges that Defendant Smoyer spoke to him about the "sanction" and told Plaintiff that he could not speak to the female staff member discussed in his letter.  *Id.* at 22.  Plaintiff avers that he filed a grievance regarding the "sanction," which was denied by Defendant Windwalker, and that he met with Defendant Ester during the appeal.  *Id.*  Plaintiff alleges that Defendant Ester also told him he broke an unwritten rule and that "this was somehow considered a 'security risk.'"  *Id.*  Plaintiff maintains that he further appealed the issue and met with Defendant Palmer who responded in writing.  *Id.*  Plaintiff argues that "[t]he confiscation of [his] letter did not further advance the interest in the security of the facility."  *Id.* at 23 (emphasis omitted).  Plaintiff believes that the confiscation of the letter led to the "sanction" of not being allowed to attend programs put on by the female staff member.  *Id.*  He further maintains that this "sanction" has led to him not being approved to become an inmate/pod worker and alleges that Defendants Smith, Palmer, Ester, and Shaffer "have all ordered

---

[4] To the extent this claim was previously brought against Defendant Cassondra Windwalker ("Windwalker"), it was not dismissed by the Court. *July 23, 2014 Order* [#18] at 10. Plaintiff also provides further details regarding his claims against Defendant Windwalker in his proposed Third Amended Complaint. *Third Am. Compl.* [#37-1] at 19-24.

that [Plaintiff is] not to be approved for inmate/pod worker status because of this issue with writing about a staff worker." *Id.* (emphasis omitted).

## C.    New Claim

Plaintiff also seeks to add a new claim in his proposed Third Amended Complaint. Plaintiff alleges that Lisa Schlueter ("Schlueter") (a Programs Volunteer Coordinator and the female staff member discussed in Plaintiff's letter) and Griffin violated his Fifth and Fourteenth Amendment rights by implementing or participating in the "sanction" discussed above. *Id.* at 25.  Plaintiff alleges that Griffin initiated the "sanction."  Plaintiff also alleges that Smoyer violated his Fifth and Fourteenth Amendment rights by upholding and further advancing the "sanction" "which resulted in barring all communication between" Plaintiff and Schlueter. *Id.*  Similarly, Plaintiff avers that Defendants Shaffer, Ester, and Palmer violated his Fifth and Fourteenth Amendment rights by upholding the "sanction."  *Id.*  Plaintiff clarifies that it is not just the imposition of the "sanction" that has violated his rights, it is the means by which the "sanction" is being implemented that is violating his rights.  *Id.* at 26. He alleges that as a result of the "sanction" he is not being "treated equally to every other inmate" who is housed with him and has the same custody level as Plaintiff.  *Id.*  Plaintiff provides several examples of times when he was singled-out or treated differently from other inmates due to the sanction. *Id.* at 27-30.  Plaintiff explains:

> The means and method by which this sanction and keep-separate has went about is what [he] believe[s] is a violation of [his] equal protection.  Especially because the Larimer County Jail is an agency, and Ms. Lisa Schlueter as an individual who works for this agency, have used this issue to manipulate certain circumstances and events that I have no say in, but leave me feeling very embarrassed, upset, humiliated, and alienated because of how many inmates have observed these actions which segregate me from the others, making me "stand-out."

*Id.* at 31.  Finally, with regard to this claim, Plaintiff states that he did not include it in his initial Complaint because he had not exhausted the grievance process with regard to this claim at the time it was filed.  *Id.* at 32.

**D.     The Motion**

In the Motion, Plaintiff seeks permission to file a Third Amended Complaint.  He explains that some of the claims he wishes to assert in the proposed Third Amended Complaint are claims that were previously dismissed by the Court and that he also would like to assert one new claim.  *Motion* [#37] at 3.  With regard to Claim 1(a) (formerly Claim 1(b)) and Claim 1(b) (formerly Claim 1(d)), Plaintiff states that "certain facts/allegations were not correctly articulated, or known to Plaintiff when originally filed," and argues that this claim "relates back to the original claim."  *Id.*  Plaintiff cites to Fed. R. Civ. P. 15(c)(1)(B) in support of allowing amendment as to this claim.  Plaintiff states that Claim 2(a) "is in its original form as filed [in] the Second Amended Prisoner's Complaint."  *Id.*  With regard to Claim 2(b), Plaintiff seeks to add new Defendants.  *Id.*  Plaintiff explains that he mentioned these individuals in his Second Amended Complaint but did not name them as Defendants because he was not sure if their conduct was "active" or "passive."  *Id.*  He maintains that after reviewing his "written accounts of the incident(s) [he] realized their actions were 'active,'" and determined that they should be named as Defendants.  *Id.*  He states that "this amendment of parties relates back to the original claim."  *Id.*  Finally, Plaintiff explains that Claim 3 "is a new claim" but argues that "the incident(s) and the individuals relate back to the issues arising out from Claim 2B of (of the Second Amended Prisoner's Complaint) and from Claim 1B (formerly 'Claim 1D') in the Second Amended Prisoner's Complaint."  *Id.*  He states that the newly named Defendants "are previously

8

mentioned as 'passive' participants in Claim 1B and Claim 2B." *Id.* Plaintiff cites to Fed.

R. Civ. P. 15(c)(1)(B) and 15(c)(1)(C) in support of allowing amendment as to this claim.

While not expressly stated, it appears that with regard to the proposed amendment

to add Claim 1(a) (formerly referred to as Claim 1(b) and dismissed by the Court),

Defendants argue that the Motion should be denied because amendment is futile.[5]

*Response* [#45] at 2-4.  With regard to Claim 1(b), which is based on Plaintiff's transfer to

another facility, Defendants argue that:

> Plaintiff could have but did not allege his transfer to El Paso was related to
> this letter.  Plaintiff makes this assertion now in an effort to meet the
> "punishment" requirement mentioned in the July 23, 2014 Order.  Even if
> Plaintiff were transferred to El Paso to separate him from Schlueter based on
> the letter or from Roberts based on discussing her personal information with
> her, such transfer does not constitute punishment as a matter of law.  A
> transfer for a legitimate penological reason is not unconstitutional.
>
> Likewise, Plaintiff's Third Amended Complaint contains no facts that would
> state a claim for denial of equal protection.
>
> Allowing Plaintiff to reassert these claims in yet another complaint that, on its
> face, fails to state a claim is futile and in direct contravention of the Court's
> July 21, 2014 Order.

*Id.* at 4.  Notably, this is the entirety of Defendants' argument regarding amendment of this

claim.  Defendants cite to no legal authority for their arguments and provide citation to no

other documents.

With regard to Plaintiff's Claim 1(d), based on his not being approved to work as an

inmate/pod worker, Defendants argue:

> Plaintiff's Third Amended Complaint adds nothing new except for a
> conclusory statement that refusal to approve him for an inmate/pod worker

---

[5] Defendants provide a citation to authority stating that leave to amend can be denied on
various grounds and then title this section of their argument "Futility."  *Response* [#45] at 2.

> [job] was related to the Schlueter letter.  This cursory reference is insufficient as a matter of law to show unequal protection or cruel and unusual punishment.  As such, Plaintiff's attempt to reassert this claim is futile.

*Id.* at 5.  Again, this is the entirety of Defendants' argument regarding amendment of this claim.  As with the last claim, Defendants cite to no legal authority to support this argument and provide citation to no other documents.

With regard to Plaintiff's new Claim 3, based on Plaintiff's belief that he is being "sanctioned" for a letter he wrote and is being treated differently from other inmates even though he was never formally written-up or charged, Defendants argue that Plaintiff fails to state a claim.  *Id.* at 5.  Defendants argue:

> Plaintiff has no right to be escorted to programs by any specific jail staff member nor does he have any right to attend a program conducted by a particular staff member.  Separating Plaintiff from Schlueter did not violate the Constitution.  As to those who allegedly upheld the "sanction," the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

> Plaintiff's new claim is futile and dictates in favor of denial of the Third Amended Complaint.

*Response* [#45] at 5-6.

Defendants also argue that the addition of new Defendants is improper because "[a]n amendment to add a party pursuant to Fed.R.Civ.P. [sic] 15 must assert a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading and must be brought within the period provided by Rule 4(m) for serving the summons and complaint . . . ."  *Id.* at 6.  Defendants maintain that the new Defendants' conduct did not arise out of an occurrence set out in the original complaint and that the new claim was not brought within 120 days of the filing of the initial complaint on May 21, 2014.  *Id.*

10

Defendants further argue that the allegations against proposed Defendants Palmer, Griffin, and Smoyer in Claim 2(b) relating to the confiscation of the letter Plaintiff wrote to his mother "do not support amending the Complaint to allow Plaintiff's confiscation of mail claim to be asserted against" them. *Id.* at 7.

In his Reply, with regard to Claim 1(b), which is based on Plaintiff's transfer to another facility, Plaintiff argues that he submitted his Second Amended Complaint for mailing on June 17, 2014 (it was filed on the Court's docket on June 19, 2014) and it was on June 19, 2014 that he spoke to Deputy Andrew Hall and discovered that his transfer was a punishment. *Reply* [#47] at 3.[6]   Plaintiff argues that he "had not put 'two and two' together at the time when [he] drafted up the Second Amended Prisoner Complaint to realize that [ ] being transferred to El Paso was done to punish [him] for [his] interactions with female staff." *Id.* at 4 (emphasis omitted). Plaintiff also attacks Defendants' position that his transfer was due to a legitimate penological reason. *Id.* at 5.

With regard to Plaintiff's Claim 1(d), based on not being approved to work as an inmate/pod worker, Plaintiff argues that Defendants completely ignore his new factual assertions.   Specifically, Plaintiff argues that his proposed Third Amended Complaint focuses on the lack of process afforded him and that he offers factual allegations regarding how he was singled-out, unlike similar prisoners. *Id.* at 6-7.

With regard to Plaintiff's new Claim 3, based on Plaintiff's belief that he is being "sanctioned" for a letter he wrote and is being treated differently from other inmates even though he was never formally written-up or charged, Plaintiff argues that this claim is based

---

[6] This conversation, including the date of the conversation, is included in the proposed Third Amended Complaint. [#37-1] at 12.

on the means and method for how the "sanction" is being imposed on him, not the type of

"sanction" imposed.  *Id*. at 7.  Plaintiff asserts that

> Claim 3 of the Third Amended Complaint has nothing to do with being
> separated from and/or not being escorted by Lisa Schlueter to programs.
> What it is about is [Plaintiff] being deliberately segregated from the other
> inmates, in front of those other inmates, when waiting in line for a program
> . . . [and being] pulled-out of line . . . which results in [Plaintiff] feeling
> ostracized, alienated, embarrassed, harassed and humiliated all because
> other inmates observing [him] . . . come over to [ask him] all sorts of
> questions and/or the inmates make all sorts of insinuations . . . ."

*Id*. at 8.  Plaintiff further argues that this claim relates to the lack of process he was given

before the "sanction" was imposed.  *Id*. at 9.

Finally, with regard to Defendants' argument that Plaintiff should not be allowed to

amend to add new parties, Plaintiff argues that the 120-day period did not begin to run until

after service was completed.  *Id*.  Plaintiff also argues that he could not have brought this

claim at the time he filed the Second Amended Complaint because he had not exhausted

his administrative grievances.  *Id*.  In addition, Plaintiff maintains that the conduct did arise

out of an occurrence set-out in the original pleading.  *Id*. at 10.  Plaintiff also offers factual

allegations regarding the new Defendants' knowledge of his claims against them.  *Id*.

## II.  Analysis

As a preliminary matter, no Scheduling Conference has been held in this case and

no pleading amendment deadline has been set.  As a result, the Motion is timely filed.  The

Court therefore considers any arguments raised by the parties related to whether justice

would be served by amendment.  Specifically, the Court should grant leave to amend

"freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In the absence of any

apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part

of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). The most important factor in deciding a motion to amend the pleadings is whether the amendment would prejudice the nonmoving party. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).

## A.    Undue Prejudice

Initially, the Court notes that Defendants have not alleged that any prejudice would occur as a result of acceptance of the proposed Third Amended Complaint. "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Minter*, 451 F.3d at 1208. Further, based on the Court's review of the factual allegations in the Second Amended Complaint and the proposed Third Amended Complaint, it is unclear how the proposed amendments alter Defendant's preparation. As such, Defendants have failed to allege any sort of prejudice, much less undue prejudice, that would result from allowing amendment. *See Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the amended claims "track[ed] the factual situations set forth in his [original] claims"); *Stender v. Cardwell*, No. 07-cv-02503-WJM-MJW, 2011 WL 1235414, at *3 (D. Colo. Apr. 1, 2011) ("where a party will not face any – let alone undue – prejudice if a motion to amend is granted, their opposition is grievously weakened").

## B.    Futility

Defendants assert that amendment of Claim 1(a) (formerly referred to as Claim 1(b)), which is based on Plaintiff's transfer to another facility, and Claim 1(d), based on his

13

not being approved to work as an inmate/pod worker, would be futile.  As noted above, Defendants do not provide any case law to support their arguments as to the futility of amendment of these two claims.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.  *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).  Defendants offer nothing more than conclusory arguments and it is not the Court's role to supply legal support for Defendants' positions.  *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [ought to be] wary of becoming advocates who comb the record . . . and make a party's case for it."); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Furthermore, Defendants fail to address the new factual allegations in the proposed Third Amended Complaint regarding the punitive nature of Plaintiff's transfer and the fact that Plaintiff was treated differently from other similarly situated inmates at the same facility.  As a result, the Court cannot conclude that Plaintiff's proposed amended Claims 1(a) and 1(d) are futile.

## C.    Claim 3

Defendants argue that Claim 3 fails to state a claim, but fail to address the merits of the allegations regarding this claim.  Defendants miscontrue the allegations by assuming that Plaintiff's Claim 3 is based on his belief that he has a "right to be escorted to programs by [a] specific jail staff member" or "to attend a program conducted by a particular staff member."  *Response* [#45] at 5.  That is not the basis for Claim 3.  As the proposed Third

14

Amended Complaint makes clear, Plaintiff's claim is based on the lack of process afforded

him before this treatment was imposed and the fact that he is being treated differently from

other inmates even though no formal charge was brought against him.  *Third Am. Compl.*

[#37-1] at 25-32; *see also Reply* [#47] at 7-8.  Defendants fail to address the factual bases

of Claim 3, and therefore, the Court cannot conclude that it is "futile" as they argue.

*Response* [#45] at 6.

## D.    Relation Back

Defendants also argue that the proposed amendments do not meet the

requirements of Fed. R. Civ. P. 15(c).  *Response* [#45] at 6-7.[7]  Pursuant to Fed. R. Civ.

P. 15(c)(1)(B) and (C), an amendment relates back to the original pleading when:

> (B)  the amendment asserts a claim or defense that arose out of the conduct,
> transaction, or occurrence set out—or attempted to be set out—in the original
> pleading; or
>
> (C) the amendment changes the party or the naming of the party against
> whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and complaint, the
> party to be brought in by amendment.

Therefore, the Court first examines Rule 15(c)(1)(B)'s requirement to determine if relation

back is appropriate based on the allegations included in the Second Amended Complaint

---

[7]  Some courts have treated a Rule 15(c) analysis as a futility analysis and some courts
have treated it as a distinct analysis after a determination of whether amendment should be granted
pursuant to Rule 15(a).  *Compare Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555,
558-59 (7th Cir. 2011) (J. Posner) ("The judge should have allowed the amendment and then,
believing that the amended complaint did not relate back, should have rendered judgment on the
merits for both defendants . . . because the statute of limitations for a suit against [one defendant]
. . . had expired.") *with Schoolcraft v. City of New York*, --- F.Supp.3d ---, 2015 WL 252413, at *4
(S.D.N.Y. 2015) (denying portion of motion to amend that did not relate back as futile).  There is
precedent in this Court for treating a Rule 15(c) analysis as part of the futility analysis within Rule
15(a).  *Ervin v. Wilson*, No. 12-cv-02602-PAB-MEH, 2014 WL 7927494, at *7 (D. Colo. Aug. 13,
2014).  Accordingly, the Court treats the Rule 15(c) analysis as part of its Rule 15(a) analysis.

and those included in Claim 3 of the proposed Third Amended Complaint.

### 1.     Rule 15(c)(1)(B)

The rationale behind Rule 15(c)(1)(B) is that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitation were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) (citation omitted).  As long as there is a "factual nexus" between the original and amended complaints, the amended claim "is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Benton v. Bd. of Cnty. Comm''s*, No. 06-cv-01406-PSF-MEH, 2007 WL 4105175, at *3 (D. Colo. Nov. 14, 2007) (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir.1983)), *aff'd*, 303 F.App'x. 625 (10th Cir. 2008).     Generally, amendments relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts.  For relation back to apply, there is no additional requirement that the claim be based on an identical theory of recovery.  *Kidwell v. Bd. of Cnty. Comm's of Shawnee Cnty.*, 40 F.Supp.2d 1201, 1217 (D. Kan. 1998), *aff'd* 189 F.3d 478 (10th Cir. 1999), *cert. denied*, 528 U.S. 1064 (1999).  On the other hand, amendments generally will not relate back if they interject entirely different facts, conduct, transactions or occurrences. It is a matter committed to the district court's discretion to decide whether a new claim arises out of the same transaction or occurrence.  *Benton*, 2007 WL 4105175, at *3 (quoting *Kidwell*, 40 F.Supp.2d at 1217).

As explained above, Plaintiff's Claim 3 seeks to add a new claim against Schlueter, Griffin, Smoyer, Shaffer, Ester, and Palmer for constitutional violations relating to the

"sanction" imposed against Plaintiff due to language about Schlueter he included in a letter he wrote to his mother. *Third Am. Compl.* [#37-1] at 25-32.   Specifically, Plaintiff alleges that Schlueter and Griffin violated his Fifth and Fourteenth Amendment rights by implementing or participating in the "sanction" discussed above. *Id.* at 25.  Plaintiff alleges that Griffin initiated the "sanction."  Plaintiff also alleges that Smoyer violated his Fifth and Fourteenth Amendment rights by upholding and further advancing the "sanction" "which resulted in barring all communication between" Plaintiff and Schlueter.  *Id.*  Similarly, Plaintiff avers that Defendants Shaffer, Ester, and Palmer violated his Fifth and Fourteenth Amendment rights by upholding the "sanction."  *Id.*  Plaintiff clarifies that it is not just the imposition of the "sanction" that has violated his rights, it is the means by which the "sanction" is being implemented.  *Id.* at 26.  He alleges that as a result of the "sanction" he is not being "treated equally to every other inmate" who is housed with him and has the same custody level as Plaintiff.  *Id.*  Plaintiff provides several examples of instances when he was allegedly singled-out or treated differently from other inmates due to the "sanction." *Id.* at 27-30.  Plaintiff explains:

> The means and method by which this sanction and keep-separate have went about it what [he] believe[s] is a violation of [his] equal protection.  Especially because the Larimer County Jail is an agency, and Ms. Lisa Schlueter as an individual who works for this agency, have used this issue to manipulate certain circumstances and events that I have no say in, but leave me feeling very embarrassed, upset, humiliated, and alienated because of how many inmates have observed these actions which segregate me from the others, making me "stand-out."

*Id.* at 31.  Plaintiff further argues that his claim relates to the lack of process he was given before the "sanction" was imposed.  *Id.* at 9.

The Claim 2(b) in the Second Amended Complaint discusses in detail Plaintiff's

concerns regarding how he was treated as a result of the alleged reading and confiscation by Defendant Windwalker of the letter he wrote to this mother. *Second Am. Compl.* [#15] at 15-17. At that time he included factual allegations regarding Griffin, Ester, and Palmer. *Id.* at 16-17. Plaintiff further alleged:

> Due to this "incident" arising[,] I never suffered anytype [sic] of "official" write-up, lockdown, and/or other disciplinary-action. However, I have suffered an on-going "sanction" from going to programs with this particular individual, as well as not being allowed to become an inmate/pod worker [ ], even though I was only terminated from my job one time. The other injurious infliction that has stemmed from this letter issue is that I am being unfairly "singled-out" and "prejudiced" against by the staff at large and the Command Staff (Sheriff Justin Smith, Captain Timothy Palmer, Lieutenant Michael Ester, Lieutenant Stacey Shaffer).

*Id.* at 17 (emphasis omitted). While Plaintiff only sought to bring a First Amendment claim in Claim 2(b) of the Second Amended Complaint, an amendment that adds a new legal theory for relief relates back as long as there is a factual nexus between the original and amended complaints. *Benton*, 2007 WL 4105175, at *3; *Kidwell*, 40 F.Supp.2d at 1217. Here, the Court finds that Windwalker, Ester, and Palmer were notified of potential litigation relating to the "sanction" imposed on Plaintiff relating to the letter he wrote to his mother. Further, Defendant Shaffer was named in Claim 2(a) in the Second Amended Complaint with regard to other conduct. *Second Am. Compl.* [#15] at 14. She, therefore, should have been made aware that Plaintiff sought to assert claims relating to alleged constitutional violations relating to the "sanction" allegedly imposed on him because of the letter he wrote to his mother. As a result, to the extent Claim 3 is alleged against these Defendants, it relates back to the Second Amended Complaint. *Krupski v. Costa Crociere* S. p. A., 560 U.S. 538, 553 (2010) ("[Rule 15(c)(1)] mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to

18

the district court's equitable discretion.").

## 2.     Rule 15(c)(1)(C)

With regard to the portion of Claim 3 that is directed at Smoyer, Schlueter and

Griffin, who were not named as Defendants in the Second Amended Complaint, the Court

must look to Fed. R. Civ. P. 15(c)(1)(C).  *Ervin v. Wilson*, No. 12-cv-02602-PAB-MEH,

2014 WL 7927494, at *7 (D. Colo. Aug. 13, 2014) ("Rule 15(c)(1)(C) applies to the addition

of new parties after the statute of limitations has run on proposed new claims. (citing *VKK*

*Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001)); *Laratta v. Raemisch*, No.

12-cv-02079-MSK-MEH, 2014 WL 1237880, at *15 (D. Colo. Mar. 26, 2014).

 As is relevant here, Rule 15(c)(1)(C) provides that an amendment to a pleading

relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against
> whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and complaint, the
> party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in
>> defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been
>> brought against it, but for a mistake concerning the proper party's
>> identity.

Fed. R. Civ. P. 15(c)(1)(C).  All of the requirements of Rule 15(c)(1)(C) "must be met in

order for [a plaintiff's] amended pleading[ ] to relate back to the date of the original."

*Garrett v. Fleming*, 362 F.3d at 692, 696 (10th Cir.2004) (citation omitted).

As an initial matter, Plaintiff's calculation regarding the 120-day period is incorrect.

Rule 4(m) states that a defendant must be served "within 120 days after the complaint is

filed . . . ."  Fed. R. Civ. P. 4(m).  Further, "the 120-day period provided by Rule 4(m) is not

restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint." *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006).   In this case the Complaint [#1] was filed on May 21, 2014.   The Court then dismissed certain claims in its July 23, 2014 Order and, because Plaintiff proceeds in forma pauperis, the Court ordered the remaining Defendants—Palmer, Smith, Shaffer, and Windwalker—served by the U.S. Marshal's Service.   The proposed Third Amended Complaint and associated Motion were filed on December 11, 2014.   That is well beyond the 120-day period set by Rule 4(m).

In *Laratta*, a pro se prisoner brought constitutional claims against employees of the Colorado Department of Corrections and argued that certain claims related back and therefore were not barred by the statute of limitations.   The Court found that the newly added defendants had constructive notice of the new claims within the limitations period. *Id*. at 16.   The Court explained that the defendants all worked at the same institution and were represented by the same counsel.   The Court concluded that those "factors weigh in favor of finding that [d]efendants . . . had constructive notice of the suit." *Id*.   The Court also noted that due to the plaintiff's pro se status and his mistaken understanding of how to name parties, the claim related back.   *Id*. at 17.

In the instant case, Plaintiff contends that he previously named Griffin in the Second Amended Complaint as a "passive" participant.   *Motion* [#37] at 3.   In addition, it is clear that the facts surrounding Schlueter's interactions with Plaintiff were in dispute at the time Plaintiff filed the Second Amended Complaint.   *Second Am. Compl.* [#15] at 16-17. Therefore, because Griffin's counsel knew that Griffin's involvement in the incidents alleged in the Second Amended Complaint could lead to his addition to this lawsuit, the Court will

20

find that Griffin had constructive knowledge within the 120-day period.  *See Scott v. Village of Spring Valley*, 577 F.App'x 81, 82 (2d Cir. 2014) ("[A] court may impute knowledge to a defendant or set of defendants because they have the same attorney(s) when there is some showing that the attorney(s) knew that the additional defendants would be added to the existing suit." (internal quotation marks and citation omitted)).  However, an amended complaint that changes defendants relates back to the date of the original complaint only if the newly-named defendant "knew or should have known that, but for a *mistake* concerning the identity of the proper party, the action would have been brought against [him]."  Fed R. Civ. P. 15(c)(1)(C)(ii) (emphasis added).  Plaintiff's inclusion of Griffin in the Second Amended Complaint shows that he knew that Griffin participated in his alleged constitutional violations, but chose to not name him.  Therefore, the Court concludes that Plaintiff did not make a mistake concerning the identity of this potential defendant.  *Briggs v. Larimer Cnty. Sheriff's Dep't*, No. 05-cv-02027-WYD-PAC, 2007 WL 2175184, at *4 (D. Colo. July 26, 2007).  Therefore, with regard to Griffin, the Court concludes that Plaintiff fails to meet the requirements of Rule 15(c)(1)(C)(ii).

The Court also concludes that Smoyer and Schlueter did not have constructive knowledge within the 120-day period.  Neither is mentioned in the Second Amended Complaint and the discussion of Plaintiff's interactions with Schlueter would not have given these individuals or their counsel any indication that they might be named as defendants in this lawsuit.  In addition, Plaintiff does not argue that "but for a mistake concerning the identity of the proper party, the action would have been brought against" them.  Fed. R. Civ. P. 15(c)(1)(C)(ii).  Accordingly, the Court finds that it would be futile to allow Plaintiff to amend to bring Claim 3 against Griffin, Schlueter, and Smoyer.

**E.      Equitable Tolling**

Plaintiff explains in his Reply that it would be unfair to not allow him to bring this

claim against these individuals because "[a]t the time of the filing of the Second Amended

Complaint [he] had not initiated and/or exhausted the remedy of the 'in-house'

Administrative Grievance Process pursuant to this 'new' Claim 3." *Reply* [#47] at 9. He

notes that he could not bring this claim without exhausting his administrative remedies. *Id.*

at 9-10. The Court construes this to be an equitable tolling argument. *Sexton v.*

*Hickenlooper*, No. 13-cv-01008-MSK-KMT, 2014 WL 5261804, at *3 n.4 (D. Colo. Oct. 15,

2014). As the Court explained in Sexton:

> Equitable tolling is governed by state law. *Fratus v. Deland*, 49 F.3d 673,
> 675 (10th Cir. 1995); *see also Wallace v. Kato*, 549 U.S. 384, 394 (2007)
> (recognizing that federal courts refer to state law for tolling rules). "Colorado
> recognizes that 'equity may require a tolling of the statutory period where
> flexibility is required to accomplish the goals of justice.' At the same time,
> 'statutes of limitations compel litigants to pursue their claims in a timely
> manner.'" *Braxton v. Zavaras*, 614 F.3d 1156, 1161 (10th Cir. 2010) (quoting
> *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996)).
> Thus, under Colorado law, "equitable tolling is limited to situations in which
> either [1] the defendant's wrongful conduct prevented the plaintiff from
> asserting the claims in a timely manner or [2] truly exceptional circumstances
> prevented the plaintiff from filing the claim despite diligent efforts." *Noel v.*
> *Hoover*, 12 P.3d 328, 330 (Colo. App. 2000). Extraordinary circumstances
> are a basis for equitable tolling because "it is unfair to penalize the plaintiff
> for circumstances outside his or her control." *Dean Witter Reynolds, Inc. v.*
> *Hartman*, 911 P.2d 1094, 196-97 (Colo. 1996). "The extraordinary
> circumstances basis for equitable tolling requires the plaintiff to make a good
> faith effort to pursue any claims." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo.
> App. 2000).

*Sexton*, 2014 WL 5261804, at *3. Here, as in *Sexton*, the Court finds that tolling of the

statute of limitations is warranted. As Plaintiff notes, a lawsuit filed without exhausting

administrative grievances is subject to dismissal for lack of subject matter jurisdiction.

Further, the Tenth Circuit has made clear that even the filing of an amended complaint

once exhaustion has been perfected will not cure pre-filing failure to fully exhaust. *Hill v. Pugh*, 75 F.App'x 715, 717 (10th Cir. Sept. 11, 2003); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999). Therefore, Plaintiff was faced with filing a complaint that was subject to dismissal for lack of subject matter jurisdiction because he did not exhaust the claim or filing a second action that would be subject to dismissal because he should have asserted a related claim in the instant lawsuit. The Court finds that this constitutes extraordinary circumstances because it would be unfair to penalize Plaintiff for attempting to follow both the grievance procedure and the applicable rules that, essentially, force him to choose between two losing outcomes.

### III. Conclusion

For the reasons stated above, IT IS HEREBY **ORDERED** that the Motion [#37] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Clerk of the Court shall accept Plaintiff's Third Amended Complaint [#37-1] for filing as of the date of this Order.

IT IS FURTHER **ORDERED** that Defendants shall answer or otherwise respond to Plaintiffs' Third Amended Complaint in accordance with Fed. R. Civ. P. 15(a)(3).

Dated: August 26, 2015

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge